MKB:ZA
F.# 2008R01677

**MO9-0293**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

AISHA HALL,
  also known as "Aisha Rochester,"
  "Asia" and "Mike Mitchell,"
MARCEL ASBELL,
  also known as "Marlowe Anderson,"
JERJUAN GARDNER,
  also known as "Henry Hill"
  and "Juan,"
SAMUEL JONES,
  also known as "Doug Johnson,"
YOLANDE REEVES,
  also known as "DeeDee Reeves"
  and "Veronica Davis,"
JACQUELINE LAMBERT,
  also known as "Jocelyn Wein"
  and "Sylvia,"
RAY KIM,
  also known as "Mike Lee,"
JINNATE GLASPER,
  also known as "Jinnate Jones,"
  and "Jinnate Grays,"
DAYANA MENDOZA,

          Defendants.

- - - - - - - - - - - - - - - - X

COMPLAINT AND
AFFIDAVIT IN SUPPORT
OF ARREST WARRANTS

(18 U.S.C. §§ 1349)

EASTERN DISTRICT OF NEW YORK, SS:

      MICHAEL PURCELL, being duly sworn, deposes and says

that he is a Special Agent with the United States Secret Service,

duly appointed according to law and acting as such.

      Upon information and belief, on or about and between

June 2008 and the present, both dates being approximate and

inclusive, within the Eastern District of New York and elsewhere, the defendants AISHA HALL, also known as "Aisha Rochester," "Asia" and "Mike Mitchell," MARCEL ASBELL, also known as "Marlowe Anderson," JERJUAN GARDNER, also known as "Henry Hill" and "Juan," SAMUEL JONES, also known as "Doug Johnson," YOLANDE REEVES, also known as "DeeDee Reeves" and "Veronica Davis," JACQUELINE LAMBERT, also known as "Jocelyn Wein" and "Sylvia," RAY KIM, also known as "Mike Lee," JINNATE GLASPER, also known as "Jinnate Jones" and "Jinnate Grays," and DAYANA MENDOZA did knowingly and unlawfully engage in a conspiracy to execute a scheme and artifice to defraud and to obtain money and property, to wit: large sums of cash, by means of false and fraudulent pretenses, representations and promises, and to carry out said scheme and artifice, did cause to be transmitted writings, signs, signals and sounds by means of wire in interstate commerce in violation of Title 18, United States Code, Section 1349.

(Title 18, United States Sections 1349).

The basis for your deponent's information and the grounds for his belief are as follows:[1]

### Introduction

1.    For the past several months, together with other agents of the Secret Service and local law enforcement agents

---

[1]  Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all of the relevant facts of which I am aware.

from across the country, your deponent has been conducting an investigation into a fraudulent scheme devised and implemented by the defendants, referred to herein as "The Proof of Funds Scheme." The information contained herein is based upon my personal knowledge from conducting this investigation, my review of records provided by, inter alia, telecommunications providers, Internet companies, banks and other financial services providers, information provided to me by other law enforcement agents and confidential sources, and my experience as a federal agent.

### Apogee Corp. and The Proof of Funds Scheme

2.     The Secret Service is conducting an ongoing criminal investigation involving a corporation called Apogee Financial Inc. ("Apogee" or "Apogee Financial"), which appears to have illegally sold fraudulent "proof of funds" documents to various individuals and entities.

3.     Proof of funds ("POF") documents are typically produced by banks and other financial institutions to verify the balance of funds that a client has in a particular bank account. Potential lenders often rely upon POF documentation in considering whether to extend credit to the individuals presenting such documentation.

4.     By way of general background, some financial entities engage in the practice of "leasing" funds to clients by establishing bank accounts in the clients' names and depositing

3

funds into the accounts for a predetermined period of time
("leased-funds accounts").  The clients may then obtain a POF
letter from the bank, which they use to enhance their apparent
creditworthiness when applying for loans.  In the course of this
investigation, I have found numerous financial entities offering
such services, usually advertising the creation of leased-funds
accounts ranging from $2 million (for a fee of approximately
$40,000) to $750 million (for fees exceeding $300,000).

     5.     Apogee holds itself out to be such an entity.
Specifically, it claims to open bank accounts and lease funds to
clients in exchange for a fee so that those clients can, in turn,
obtain POF documentation.

     6.     However, instead of leasing any funds to its
clients' bank accounts or creating any leased-funds accounts,
Apogee creates fraudulent POF letters on bank stationery falsely
stating that accounts containing significant funds exist in its
clients' names.  Apogee has created false POF letters on behalf
of several banks, including Bank of America, Wachovia Bank, JP
Morgan Chase, and Wells Fargo and other financial institutions,
and has supplied those fraudulent letters to their clients in
exchange for a fee.

     7.     To date, the investigation has uncovered at least
fifty POF documents purchased from Apogee Financial that the
Secret Service has verified with the purported originating

4

financial institutions to be fraudulent.

## Overview of the Scheme

8.    Apogee generally recruits potential clients through advertising on online services such as Craigslist.com and through relationships it developed with certain brokers.  Some of those brokers were collusive in Apogee's scheme to defraud their clients and were aware that the POF letters Apogee provided were not in fact genuine.

9.    Once a client decided to lease funds from Apogee, the client and Apogee would generally sign a contract in which the client agreed to pay Apogee a certain fee in exchange for Apogee providing him or her with a series of financial services.

10.    One such contract, signed between Apogee and one of its clients, hereinafter referred to as "Client A," on or about August 3, 2008, contains the following provisions.  Apogee agreed to provide services including but not limited to:  the "opening of a money market, Reserved Funds Letter, and/or checking or savings sub account" containing a given amount of funds and the provision of "written documentation confirming the type of account and the available balance."  The contract states that the account "is valid for 60 days with the option for 30/60 day extension."  In addition, the contract provides that account "verification can only be done by the bank official who signed the instrument and said bank official will only verify that the

5

account is an existing and valid account via telephone.   This
account cannot be pinged or electronically verified, and account
balance verification can only be completed via FAX."   Several
other Apogee contracts reviewed over the course of the
investigation contain similar or identical language.

        11.    Once the contract was signed, clients often
placed the fee owed Apogee in an escrow account.   The escrow
funds would be released to Apogee upon Apogee's creation of the
leased-funds account and delivery of the POF documentation to the
client.

        12.    After the fee amount was placed by the client in
an escrow account, Apogee would generate a fraudulent POF letter
on bank stationery purporting to confirm that a given account, in
the client's name, existed at that bank and contained the agreed-
upon amount of funds.   In every instance where the Secret Service
has attempted to verify a POF letter sold by Apogee with the
financial institution on whose behalf it appeared to be written,
officials at the financial institution have confirmed that the
letters are fraudulent and that the accounts they describe no not
exist and never existed.

        13.    The false POF letters generated by Apogee were
typically purportedly signed by a banker at a particular branch
of the bank on whose stationery they were printed.   A phone
number and a fax number were provided for the banker.   Over the

                                    6

course of the investigation, the Secret Service has determined that the phone numbers listed on POF letters were, in the vast majority of cases, the actual phone numbers of the alleged signatory bankers.  The fax number, however, did not belong to that banker or to the bank.  Rather, the fax number typically linked to online electronic fax ("e-fax") accounts held by Apogee employee YOLANDE REEVES using the email address "davispof@gmail.com," Apogee employee MARCEL ASBELL using the email address "mr.andersonmoney@gmail.com," and Apogee CEO AISHA HALL using the email address "equitygiant@yahoo.com."

14.   The bankers whose alleged signatures and contact information were printed on the false POF letters were typically recruited by Apogee employees, such as AISHA HALL, or individuals associated with Apogee, such as JACQUELINE LAMBERT and RAY KIM. Several of the bankers, including JINNATE GLASPER and DAYANA MENDOZA, were participants in Apogee's fraudulent scheme.  The collusive bankers were told that individuals would be calling them seeking to verify a given account balance and that they should tell the caller to fax in their verification request.  The collusive bankers were aware that the fax number provided to the callers was not an actual bank fax number, but instead belonged to one of the members of The Proof of Funds Scheme.  The bankers were typically paid a predetermined sum for each phone call they received from an Apogee client.

7

15.   Once a verification request was faxed to the Apogee e-fax number provided on the false POF, Apogee would fax a Verification of Deposit form back to requestor.

16.   Once an Apogee client received a POF letter and/or verified the account balance described in the letter, the client would release the funds from escrow.  The majority would be deposited into an Apogee online escrow account and, in cases where a client was referred to Apogee by a broker, some portion of the funds would be paid into the broker's online escrow account.  The funds Apogee earned were distributed among Apogee employees.

## The Individual Defendants

17.   The defendants are employees and associates of Apogee who conspired and participated in Apogee's fraud.  Apogee conducted much of its business through email as detailed and described below. *A review of Apogee's email records and the statements of many Apogee clients indicates that three salespeople worked for CEO AISHA HALL : "Marlowe Anderson," "Henry Hill," Aisha Hall and "Doug Johnson." A review of Apogee's bank records indicates that only three individuals received checks from Apogee with the no-*

18.   A review of several documents obtained during the *tations* course of the investigation indicates that AISHA HALL, also known *"bonus" or "commission* as "Aisha Rochester," "Asia," and "Mike Mitchell," is the CEO of *MARCEL ASBELL,* Apogee.  Records filed with the Georgia Secretary of State *JERJUAN GARDNER and SAMUEL JONES* indicate that on or about September 6, 2007, Aisha Rochester

8

became the CEO of Apogee.[2]  Annual corporate registration records show Rochester as the CEO of Apogee up through October 27, 2008, which is the most recent registration date.  In or around October 2008, HALL indicated in Apogee's registration forms that "Christopher Morgan" was the Chief Financial Officer of Apogee.  Prison records indicate, however, that the "Christopher Morgan" who resided at the address provided on Apogee's registration forms has been incarcerated since at least December 18, 2007.  Aisha Rochester is also listed as the authorized signatory on Apogee Financial's JP Morgan Chase account.  Bank records indicate that that account was opened in Long Beach, New York by an individual identified herein as CS7.  CS7 is a banker at the Long Beach, New York branch of JP Morgan Chase who is cooperating with law enforcement.

19.  According to various email records, AISHA HALL uses the email accounts "equitygiant@yahoo.com," "verifyfunds@gmail.com," and "electronicpof@gmail.com."

20.  According to phone records, AISHA HALL is the subscriber of the mobile phone number 770-286-8619.  HALL was observed in possession of this phone by law enforcement agents in December 2008 while executing a search warrant of her residence.  Subscriber records for the phone, which is an Internet-capable

---

[2]  State records indicate that "Rochester" is HALL's maiden name.

mobile device, indicate that the account holder, HALL, associated three email addresses with the device: "equitygiant@yahoo.com," "verifyfunds@gmail.com," and "electronicpof@gmail.com."

21.    As detailed in paragraphs 25, 28, 35, 73, 83, 86, 95, 96, 100, 103, 107, 109 and 111 below, AISHA HALL used the email accounts "equitygiant@yahoo.com," "verifyfunds@gmail.com," and "electronicpof@gmail.com" to further Apogee's fraudulent scheme.

22.    CS7, the bank employee referenced in paragraph 18 above, informed law enforcement that he has known AISHA HALL and her husband for many years and that the three of them went to high school together. He further stated that sometime in the summer of 2008, AISHA HALL contacted him at his bank in Long Island and asked him if he would be willing to provide account verifications over the phone in exchange for cash. CS7 agreed.

23.    According to CS7, AISHA HALL told him she would pay him $3,000 per phone call. In or about and between August and October 2008, CS7 provided verifications to approximately 16 callers and was paid approximately $23,500. CS7 stated that HALL would pay him by depositing cash into his account. CS7's bank records reflect the payments made to him by AISHA HALL. In addition, bank video records contain photographs of AISHA HALL making cash deposits into CS7's bank account. CS7 identified the individual in the bank photographs as AISHA HALL and the

10

photographs match the photograph of AISHA HALL contained in her
Michigan driver's license.

24.    On or about February 4, 2009, CS7 placed a
consensually-monitored phone call to AISHA HALL that was recorded
by law enforcement.  CS7 asked HALL how he should explain the
cash deposits into his account if questioned by law enforcement.
HALL told CS7 to say either that the payments were being made in
reference to his website or to claim that CS7's old college
friends who owed him money had given HALL the money to deposit
into his account.  AISHA HALL assured CS7 that she was still
making lots of money and would take care of him if he got in
trouble.

25.    On or about February 9, 2009, AISHA HALL sent CS7
an email from the address "electronicpof@gmail.com."  In that
email she states, "Just be smart on how u speak to people and
remember that there are things going on that r real big that have
nothing to do with u.  I can afford big top notch lawyers all day
and you may not be in that position so that's y I offered you my
assistance as a friend."

26.    On or about February 11, 2009, HALL and CS7 met
at a restaurant in Freeport, New York.  Their conversation was
partially observed and fully recorded by law enforcement.  At
that meeting, HALL gave CS7 $2,000 to help him afford an attorney

11

and/or pay off his bills.  During that meeting, HALL told CS7,
"I'm still doing proof of funds."

Marcel Asbell

27.  A review of several documents obtained during the
course of the investigation indicates that MARCEL ASBELL, also
known as "Marlowe Anderson," is an employee of Apogee.  In his
bank records, ASBELL lists his employer as "Apogee Financial."  A
review of ASBELL's bank records indicate that ASBELL deposited
approximately $91,570 in checks drawn on Apogee's bank account
into his bank account between August and November 2008.  Bank
records further indicate that ASBELL deposited approximately
$20,000 into his account in the form of Bank of America cashiers'
checks where the remitter was identified as "Apogee Financial,
Inc.," and approximately $23,500 in the form of Bank of America
cashiers' checks where the remitter was identified as AISHA HALL
between August and November 2008.

28.  A review of various email records demonstrates
that AISHA HALL was asked to supply information for a background
check being conducted on MARCEL ASBELL on or about November 7,
2008.  She listed ASBELL's business as "Apogee Financial," wrote
that he had been hired on June 15, 2004, and described his annual
salary as $103,466.

29.   According to various email records, MARCEL ASBELL
uses the email account "mr.andersonmoney@gmail.com."  The name

12

associated with that account is "Marlowe Anderson," one of
ASBELL's aliases.  The email service provider has explained to
the Secret Service that an email accountholder can associate any
name with an email account that they choose because the service
provider does not attempt to verify that information.

30.   A review of telecommunications records indicates
that the email account "mr.andersonmoney@gmail.com" was accessed
on multiple dates from an Internet-capable mobile telephone with
the number 313-598-6593.  Phone records indicate that the
subscriber for the phone number 313-598-6593 lists as their email
address "mr.andersonmoney@gmail.com."  Phone records also
indicate that that number is registered to an individual named
"Deborah Rodriguez" but that the address provided for that
individual is "18941 Pinehurst St., ATTN Marcel Asbell, Detroit
MI 48221."

31.   According to records obtained from the Michigan
Department of Motor Vehicles, MARCEL ASBELL provided the above-
listed Pinehurst St. address as his address to the Michigan
Department of Motor Vehicles and it is the address listed on his
driver's license.

32.   Email records reveal that on multiple occasions
the user of the account "mr.andersonmoney@gmail.com" is addressed
as MARCEL.

33.   As detailed in paragraphs 40, 73, 76, 90, 97, 99,
100, 101, 102, 103, 104, 105 and 106 below, MARCEL ASBELL used

the email account "mr.andersonmoney@gmail.com" to further Apogee's fraudulent scheme.

Jerjuan Gardner

34.    A review of several documents obtained during the course of the investigation indicates that JERJUAN GARDNER, also known as "Henry Hill" and "Juan," is an employee of Apogee.  In his bank records, GARDNER lists his employer as "Apogee."  A review of Gardner's bank records indicate that on or about and between August 2008 and September 2008, JERJUAN GARDNER deposited several checks drawn on Apogee's bank accounts, for a total of at least $8,825, which note in the memo section that they are being written for "Salary," "Commission," and "BOA/Closed Deal #1," among other things.  Bank camera records contain a photograph of GARDNER depositing one of the checks from Apogee into his account.  GARDNER's image in that photograph matches the image contained in the photograph on his Michigan driver's license.

35.    According to email records, AISHA HALL was asked to supply information for a background check being conducted on JERJUAN GARDNER on or about November 7, 2008.  She listed GARDNER's business as "Apogee Financial," wrote that he had been hired on April 1, 2005, and described his annual salary as $74,882.

36.    According to various email records, JERJUAN GARDNER uses the email account "hill4funds@gmail.com."  The name

14

associated with that account is "Henry Hill," one of GARDNER's

aliases.  The email service provider has explained to the Secret

Service that an email accountholder can associate any name with

an email account that they choose because the service provider

does not attempt to verify that information.

37.    Housing application records indicate that JERJUAN

GARDNER and MARCEL ASBELL applied for rental housing together.

On the application, JERJUAN GARDNER listed his employer as Apogee

Financial and AISHA HALL as the contact person for his employer.

GARDNER listed "Doug Johnson," a known alias of SAMUEL JONES

(described in detail below), as a reference.  He provided as his

email address "donjuan720@aol.com."  He provided as his phone

number 313-790-0008, which phone records indicate is subscribed

to MARCEL ASBELL.

38.    Email records indicate that at least 9 emails

with photographic attachments have been sent from the mobile

phone number 313-790-0008 identified above to the email address

"hill4funds@gmail.com."  Those photos, which appear to have been

taken by the subject of himself, depict an individual who matches

the photograph on JERJUAN GARDNER's Michigan driver's license.

At least one photo is of both JERJUAN GARDNER and MARCEL ASBELL.

Another photograph appears to have been taken inside Apogee's

office.  In that picture, GARDNER appears in front of a

whiteboard on which "commission rates" are listed. The commission
rate listed for deals with a value of $500,000 or more
is 10%.  MJP

39.   An email with the rental application described in paragraph 37 above was forwarded to "donjuan720@aol.com" to "hill4funds@gmail.com" on or about November 3, 2008.

40.   An email was sent by MARCEL ASBELL using the account "mr.andersonmoney@gmail.com" to GARDNER at "hill4funds@gmail.com" on or about October 13, 2008 which attached various photographs.  Among those photographs were some including both JERJUAN GARDNER and MARCEL ASBELL.

41.   Phone records for the number JERJUAN GARDNER identified as his on his rental application, 313-790-0008, show several phone calls between GARDNER and other Apogee employees, as well as brokers who did business with Apogee on or about and between September and November 2008.  Also, on several occasions emails were sent to "hill4funds@gmail.com" in which the sender asked "Henry Hill" to call them and provided a contact number. Phone records demonstrate that within moments after those emails were sent, a call was placed from 313-790-0008, GARDNER's telephone number, to the number provided in the email.

42.   As detailed in paragraphs 73, 81, 82, 84, 85, 87, 88, 90 and 91 below, JERJUAN GARDNER used the email account "hill4funds@gmail.com" to further Apogee's fraudulent scheme.

Samuel Jones

43.   A review of several documents obtained during the course of the investigation indicates that SAMUEL JONES, also

known as "Doug Johnson," is an employee of Apogee.  A review of

Apogee's bank records shows at least 5 checks written to SAMUEL

JONES in which the memo section indicates that the check is for

"bonus application," "interim salary," or "salary."  Bank video

records contain a photograph of JONES depositing one of Apogee's

checks into his account.  That bank photograph matches the

photograph of JONES on his driver's license. *A review of emails from the account "dj4914@gmail.com" and SAMUEL JONES's bank records indicates that*

44.    According to various email records, SAMUEL JONES *on multiple occasions where emails*

uses the email accounts "dj4914@gmail.com" and *indicated that "Doug Johnson" had closed a deal with an Apogee POF client,*

"betterlifeinvs@hotmail.com."  The name associated with the email

account "dj4914@gmail.com" is Doug Johnson, one of JONES's *deposits were made very soon thereafter from Apogee's bank account to*

aliases.  The email service provider has explained to the Secret *JONES's bank account*

Service that an email accountholder can associate any name with *which contained the*

an email account that they choose because the service provider *notations*

does not attempt to verify that information. *"bonus" or "commission."*

*HJP*

45.    Subscriber records for

"betterlifeinvs@hotmail.com" indicate that the accountholder is

named SAMUEL JONES.  The phone number contained in those records

is the same phone number associated with SAMUEL JONES's bank

account at JP Morgan Chase, into which he deposited the paychecks

he received from Apogee.

46.    An email sent to SAMUEL JONES at

"betterlifeinvs@hotmail.com" on November 19, 2008 with the

subject "Please CC me on the emails and this is a NCND," was

17

forwarded by the sender to "dj4914@gmail.com" on November 21, 2008 with the subject, "Hello Sam Please CC me on the emails and this is a NCND."

47.    As detailed in paragraphs 112, 113, 114, 116, and 117 below, SAMUEL JONES used the email accounts "dj4914@gmail.com" and "betterlifeinvs@hotmail.com" to further Apogee's fraudulent scheme.

<u>Yolande Reeves</u>

48.    A review of several documents obtained during the course of the investigation indicates that YOLANDE REEVES, also known as "Veronica Davis" and "DeeDee Reeves" is an employee of Apogee.  In her bank records, REEVES lists her employer as "Apogee Financial."  According to Apogee's bank records, Apogee wrote several checks for varying amounts to REEVES on its corporate account.  The memo section of those checks specified that the checks were either "Salary" or "Salary and Bonus."

49.    According to various email records, YOLANDE REEVES uses the email accounts "davispof@gmail.com" and "yolandede@comcast.net."  A review of the emails indicates that she primarily conducts Apogee business through the account "davispof@gmail.com."  The name associated with that account is "Veronica Davis," one of REEVES's aliases.  As explained above, an email accountholder can associate any name with an email account that they choose because the service provider does not

18

attempt to verify that information.

50.     Although she associated the false name "Veronica Davis" with the "davispof@gmail.com" email account, REEVES frequently signed emails sent from that account with her true name.  For example, on September 11, 2008, YOLANDE REEVES sent an email message from "davispof@gmail.com" to National Garage Parking and signed that message "Yolande Reeves."

51.     Furthermore, when YOLANDE REEVES purchased a "powercard" from Dave & Buster's Inc. on or about April 14, 2007, she provided them with the name "Yolande Reeves" and the email address "davispof@gmail.com."

52.     YOLANDE REEVES also received emails at her "davispof@gmail.com" account addressing her by her real name, or her nickname "Dee Dee," rather than by her alias "Veronica Davis."  For example, on November 12, 2008, Apogee associate JACQUELINE LAMBERT emailed REEVES at "davispof@gmail.com" from her account, "lambertbiz@gmail.com," and addressed her as "Dee Dee."  On September 10, 2008, Apogee's CEO AISHA HALL emailed REEVES at "davispof@gmail.com" from her account, "verifyfunds@gmail.com," and addressed REEVES as "Dee Dee."

53.     As detailed in paragraphs 13, 73, 79, 86, 87, 88, 91, 99, 102, 105, 107, and 113, YOLANDE REEVES used the email account "davispof@gmail.com" to further Apogee's fraudulent scheme.

Jacqueline Lambert

54.    A review of several documents obtained during the
investigation indicates that JACQUELINE LAMBERT, also known as
"Jocelyn Wein" and "Sylvia," is an individual who did business
with Apogee.  Specifically, LAMBERT recruited bankers to provide
false verifications over the phone to Apogee clients to whom
Apogee sold fake POF documents.  Apogee paid LAMBERT each time
one of its clients made a call to one of the bankers working for
LAMBERT.

55.    According to various email records, JACQUELINE
LAMBERT uses the email accounts "lambertbiz@gmail.com,"
"consultbiz@yahoo.com," and "jacquelinlambert@sbcglobal.net."
The majority of emails sent to LAMBERT at "lambertbiz@gmail.com"
and "consultbiz@yahoo.com" address LAMBERT as "Jackie."

56.    An individual who works for Bank of America in
Dallas, Texas, and is cooperating with law enforcement,
identified herein as CS4, told law enforcement that he had known
JACQUELINE LAMBERT for a number of years and was recruited by her
sometime in the summer of 2008 to provide false account
verifications.  CS4 stated that LAMBERT told him that he would
receive phone calls at his bank seeking to verify the existence
of non-existent bank accounts and that she would pay him $2,500
per phone call to tell the caller that the account existed.  CS4
falsely verified one account at LAMBERT's direction and

subsequently declined to provide any more verifications. According to CS4, LAMBERT sent CS4 $5,000 — $2,500 for the phone call and another $2,500 for his troubles - in cash via Federal Express.  CS4 placed a consensually-monitored phone call to LAMBERT in the presence of law enforcement at the number 916-825-9112 on or about March 19, 2009, during which LAMBERT acknowledged having known CS4 for a number of years.

57.    As detailed in paragraphs 52, 58, 68, 73, 90, 95, 96, and 107, JACQUELINE LAMBERT used the email accounts "lambertbiz@gmail.com" and "consultbiz@yahoo.com" to further Apogee's fraudulent scheme.

Ray Kim

58.    A review of several documents obtained during the investigation indicates that RAY KIM, also known as "Mike Lee," is an individual who worked with JACQUELINE LAMBERT and did business with Apogee.  Specifically, KIM helped LAMBERT recruit bankers and served as the bankers' point of contact.

59.    According to various email records, RAY KIM uses the email account "mleelee1975@gmail.com."  The name associated with that account is "Mike Lee," one of KIM's aliases.  As explained above, an email accountholder can associate any name with an email account that they choose because the service provider does not attempt to verify that information.

21

60.    An individual who is cooperating with law enforcement, identified herein as CS5, told law enforcement that he was introduced to RAY KIM by a mutual friend when he was seeking to repair his credit.  KIM asked CS5 if he knew any bankers who would be willing to provide account verifications. CS5 referred KIM to a number of bankers, one of whom is a banker at a Wachovia branch in New Jersey who is cooperating with law enforcement and identified herein as CS6.

61.    CS6 has told law enforcement that he was put in touch with RAY KIM by CS5 in or about early October 2008.  He stated that RAY KIM told him that KIM would pay him $500 per phone call to receive phone calls at his bank seeking verification of certain accounts and to tell the callers to fax in their verification requests.  CS6 knew that the fax number the callers had was not a bank fax number.

62.    CS6's name, bank contact information and purported signature appear on at least 15 false POF documents sold by Apogee.

63.    According to CS6, RAY KIM would either call, text message, or email him every time an account verification call was going to come into CS6's office.  KIM would provide CS6 with the details of the account that the caller would be seeking to verify.

64. CS6 stated that KIM emailed him from the account "mleelee1975@gmail.com." An email dated October 27, 2008 from "mleelee1975@gmail.com" with the subject "New Email" addressed to CS5 and CS6 states, "Please start using this email address for all correspondence. Thanks." Email records contain at least 3 emails sent from RAY KIM at "mleelee1975@gmail.com" to CS6 that contain details on various accounts for which Apogee sold false POF letters. Phone records confirm that CS6 and RAY KIM exchanged a large volume of phone calls and text messages in October and November 2008.

65. CS5 told law enforcement that RAY KIM would deposit money into his bank account every time CS6 provided a phone verification and that CS5 would then transfer a portion of those funds to CS6's account. KIM would generally pay CS5 $1,200 per phone call and CS5 would give $500 of that sum to CS6. CS5's bank records reflect the payments described by CS5.

66. An email dated December 2, 2008 from RAY KIM at "mleelee1975@gmail.com" to CS5 provides, "Please let me know all of the calls you believe we owe you for. Thanks."

67. According to CS6, on or about December 3, 2008 RAY KIM deposited $500 directly into his bank account because CS5 was delaying paying CS6. This transaction is reflected in CS6's bank records. Additionally, on December 5, 2008 RAY KIM, using the email address "mleelee1975@gmail.com," sent CS6 an email with

23

the subject "Copy of Transaction" that attached an image of a
bank slip documenting the $500 transaction with CS6's bank
account.   Photographs from bank cameras depict an individual
matching the photograph of RAY KIM on his California driver's
license making the $500 deposit into CS6's account.

      68.   CS6 states that RAY KIM told him that KIM's boss
was a woman named "Sylvia."   He noted, however, that on least one
occasion KIM "slipped" and referred to "Sylvia" as "Jackie,"
i.e., JACQUELINE LAMBERT.

## Jinnate Glasper

      69.   A review of several documents obtained during the
course of the investigation indicates that JINNATE GLASPER, also
known as "Jinnate Jones" and "Jinnate Grays," was a banker at a
Wells Fargo branch in Pittsburg, California who was paid by
Apogee to provide false verifications for non-existent Wells
Fargo accounts referenced in fraudulent POF letters sold by
Apogee.

      70.   JINNATE GLASPER's name, purported signature, work
phone number and work address information appears on at least
seven fraudulent POF documents sold by Apogee.

      71.   A broker who referred clients to Apogee and is
cooperating with law enforcement, identified herein as CS2, told
law enforcement that he had leased funds on behalf of one of his
clients from Apogee.   CS2 turned over to law enforcement copies

24

of the POF letter Apogee provided him.  The letter is dated
December 2, 2008 and printed on Wells Fargo stationery and it
states that $150,019,000.28 was held in an account by CS2's
client bearing the account number 101-7743698.  Wells Fargo has
confirmed that the referenced account does not exist and never
existed.  The letter is purportedly signed by JINNATE GLASPER and
list GLASPER's work address and phone number.  Phone records and
Wells Fargo records indicate that the fax number provided, 925-
388-8289, does not belong to Wells Fargo.

        72.    On or about December 5, 2008, a Secret Service
agent posing as a trader placed a recorded phone call to JINNATE
GLASPER at her work phone number.  Another agent stationed in the
bank observed GLASPER answer the phone.  The caller asked GLASPER
if she could verify an account with the number 101-7743698
belonging to CS2's client.  GLASPER replied, "that account is set
up and in great standing."  The agent then asked if he could fax
over his request and get a verification in writing.  GLASPER said
that he could.  When asked for a fax number, GLASPER gave the
number 925-388-8289, which as noted above is not a Wells Fargo
number.

        73.    A review of Apogee employees' email records
reveals at least 27 emails between Apogee employees referencing
POF deals handled by JINNATE GLASPER.  For example, on or about
December 3, 2008, YOLANDE REEVES, using the email account

25

"davispof@gmail.com," forwarded a fraudulent POF letter bearing GLASPER's name, purported signature, and contact information to AISHA HALL at "verifyfunds@gmail.com" who then forwarded it to JERJUAN GARDNER at "hill4funds@gmail.com," who sent it to an Apogee client. On that same day, MARCEL ASBELL, using the email account "mr.andersonmoney@gmail.com," sent an email to JACQUELINE LAMBERT at the email account "lambertbiz@gmail.com" with the subject "my accounts that need to be activated." "DEAL 1" in that email listed a particular client, bank, signor, and account number, and also listed as the "banker," "jinnate glasper." Additionally, on or about December 4, 2008, AISHA HALL, using the email address "verifyfunds@gmail.com," sent an email to JACQUELINE LAMBERT at the email account "lambertbiz@gmail.com," with the subject "Aqua Trade Flipped to Jinnate!" The body of the email reads, in relevant part, "I am flipping Aqua Trade to Jinnate. They will call tomorrow."

Dayana Mendoza

74. A review of several documents obtained during the course of the investigation indicates that DAYANA MENDOZA is a banker at a Wells Fargo branch in Emeryville, California who was paid by Apogee to provide false verifications for non-existent Wells Fargo accounts referenced in fraudulent POF letters sold by Apogee.

75.    DAYANA MENDOZA's name, purported signature, work phone number and work address information appear on at least 12 fraudulent POF documents sold by Apogee.

76.    CS2 and one of his clients, who is cooperating with law enforcement and identified herein as CS3, agreed to lease funds from Apogee on behalf of a company identified herein as Company A.  According to CS2 and CS3, as well as email records, Apogee employee MARCEL ASBELL, whom they knew by his alias Marlowe Anderson, sent them a POF letter bearing MENDOZA's name and purported signature on or about November 18, 2008.  That POF letter, printed on Wells Fargo stationery, states that $51,521,655.76 is held in an account by Company A bearing the number 101-8943572.  Wells Fargo has confirmed that the referenced account does not exist and never existed.  The POF letter is purportedly signed by DAYANA MENDOZA and lists MENDOZA's work address and phone number.  The fax number provided, however, does not belong to Wells Fargo.  Instead, it belongs to an "eXtreme Fax" account that records reveal is linked to an email account held by Apogee employee YOLANDE REEVES, "davispof@gmail.com."

77.    CS3 told law enforcement that he called DAYANA MENDOZA at the work phone number provided for her on the POF letter on or about November 17, 2008.  He stated that he asked

27

MENDOZA to verify that the account referenced in the POF letter existed and that MENDOZA told him it did exist.

78.   CS2 told law enforcement that he participated, via the conference call feature of his phone, in the call CS3 placed to DAYANA MENDOZA on November 17,2008, although he did not speak.  He stated that CS2 asked MENDOZA to verify the existence of the account referenced in the POF letter and that MENDOZA said it did exist.

79.   On or about December 5, 2008, a Secret Service agent called DAYANA MENDOZA at her work number listed on the POF letter and posed as a third party seeking to verify the account referenced in the POF letter. Another Secret Service agent present in the Emeryville Wells Fargo branch at the time of the call observed MENDOZA answer the phone.  The call was recorded by law enforcement.  MENDOZA stated that she could not verify anything but that the caller could fax in his request.  The agent asked what fax number he should send it to and MENDOZA asked him what fax number he had.  The agent provided the fax number listed on the POF letter, which was not a Wells Fargo number but instead linked to an online fax account held by Apogee employee YOLANDE REEVES.  MENDOZA stated, "yeah, just fax it to that number."

## **Examples of Apogee's Fraudulent POF Scheme**

The CS8 Deal

80.    An individual who leased funds from Apogee with the help of a financial advisor and is cooperating with law enforcement, identified herein as CS8, has described his business dealings with Apogee to law enforcement officers.  CS8 stated, and Apogee records confirm, that he signed a contract to lease funds from Apogee on or about September 26, 2008.  CS8 agreed to pay Apogee $29,000 to lease $10,000,000 for  a period of 60 days.

81.    On or about September 26, 2008, CS8's financial advisor sent an email to JERJUAN GARDNER, whom he knew as "Henry Hill," at the email address "hill4funds@gmail.com."  Attached to that email was a confirmation that CS8 had deposited $29,000 into an online escrow account.

82.    On or about September 29, 2008, JERJUAN GARDNER, using the email address "hill4funds@gmail.com" sent an email to CS8's financial advisor attaching a POF letter.  That letter, dated September 29, 2008 and printed on Wells Fargo stationery, stated that $10,875,446.87 was held in an account by CS8 bearing the account number 101-7703554.  It was purportedly signed by a banker identified herein as Collusive Banker 2.  Wells Fargo has confirmed that the referenced account does not exist and never existed.

83.    CS8 stated that on or about September 30, 2008, as confirmed by his escrow account records, he transferred $29,000 from his online escrow account to an Apogee online escrow

account entitled "Stikkee."  A review of the escrow company's records indicates that the account "Stikkee" is held by AISHA HALL.  The email address associated with the account is "equitygiant@yahoo.com."

84.  Bank and escrow account records indicate that on or about October 1, 2008, $28,974 was withdrawn from AISHA HALL's escrow account and transferred to Apogee's JP Morgan Chase bank account.  Bank records indicate that on or about October 3, 2008, a check to JERJUAN GARDNER was written on Apogee's bank account for $1400.  The memo section of the check read, "Commission."

85.  On or about September 30, 2008, CS8's financial advisor sent an email to JERJUAN GARDNER at the address "hill4funds@gmail.com" advising that the title of the banker who purportedly signed the POF letter, Collusive Banker 2, was incorrect because it did not describe him as a "branch manager."

86.  On or about September 30, 2008, YOLANDE REEVES, using the email account "davispof@gmail.com," sent an email to AISHA HALL at "verifyfunds@gmail.com" attaching a POF letter written on CS8's behalf.  That letter, printed on Wells Fargo stationery and dated September 29, 2008, stated that $10,875,446.87 was held in an account in CS8's name bearing the account number 101-7703554.  It was purportedly signed by Collusive Banker 2. The letter described Collusive Banker 2 as a

30

"branch manager."  Wells Fargo executives have confirmed that no such account exists or ever existed.

87.  On or about October 1, 2008, YOLANDE REEVES, using the email account "davispof@gmail.com," sent an email to JERJUAN GARDNER at "hill4funds@gmail.com" with the subject "Revised letter."  Attached to that email was the September 29, 2008 POF letter REEVES had sent to AISHA HALL earlier that day.  On or about October 1, 2008, JERJUAN GARDNER, from the email account "hill4funds@gmail.com," sent that letter as an email attachment to CS8's financial advisor, noting in the email that it was a "corrected bank instrument."

88.  On or about October 8, 2008, YOLANDE REEVES, using the email account "davispof@gmail.com," sent an email to JERJUAN GARDNER at "hill4funds@gmail.com" with the subject "[CS8] DOCS REV."  Attached to that email was a POF letter printed on Wells Fargo stationery dated October 8, 2008.  That letter stated that $11,347,992.44 was held in an account in CS8's name bearing the account number 101-7703554.  Wells Fargo executives have confirmed that no such account exists or ever existed.  On or about October 8, 2008, JERJUAN GARDNER, using the email account "hill4funds@gmail.com," sent an email to CS8's financial advisor with the subject "documents revised" to which the October 8, 2008 was attached.  The email read, in relevant part "sorry about the mistakes, everything looks good this time."

31

89.   CS8 told law enforcement that he complained to his financial advisor and Apogee because he was unable to verify the existence of the accounts Apogee purported to have set up on his behalf.

90.   On or about November 14, 2008, JERJUAN GARDNER, using the email account "hill4funds@gmail.com," sent an email to MARCEL ASBELL at the account "mr.andersonmoney@gmail.com" with the subject, "INFO."  The email stated, "November 14, 2008 ACCOUNT NAME [CS8] ACCOUNT # 101-7703554 Basic POF Letter Dayana Mendoza."  On or about November 14, 2008, MARCEL ASBELL, using the email account "mr.andersonmoney@gmail.com," sent an email to JACQUELINE LAMBERT at the email address "lambertbiz@gmail.com" with the subject "New deal for Wells Fargo."  The content of that email was identical to the content of the email between GARDNER and ASBELL described above.  On or about November 14, 2008, JACQUELINE LAMBERT forwarded the email from MARCEL ASBELL to AISHA HALL at the email address "consultbiz@yahoo.com."

91.   On or about November 14, 2008, YOLANDE REEVES, using the email account "davispof@gmail.com," sent an email to JERJUAN GARDNER at "hill4funds@gmail.com" with the subject "revised [CS8] doc."  Attached to that email was a POF letter printed on Wells Fargo stationery and dated November 14, 2008. That letter states that $11,821,655.76 is held in an account by CS8 bearing the account number 101-7703554.  The letter purports

32

to be signed by DAYANA MENDOZA and provides her Wells Fargo
address and phone number.  Wells Fargo executives have confirmed
that no such account exists or ever existed and that the letter
is incorrect when it states that DAYANA MENDOZA is a "branch
manager" because she has never held that position.  On or about
November 14, 2008, JERJUAN GARDNER, using the email address
"hill4funds@gmail.com," forwarded that letter to CS8's financial
advisor.

The Client A Deal

    A.  Overview

          92.    Apogee provided at least two fraudulent POF
letters to a client referred to herein as Client A.

          93.    On or about September 5, 2008, Apogee provided a
false POF letter to Client A.  The letter was dated September 5,
2008 and printed on Bank of America letterhead.  It stated, in
sum and substance, that $85,000,000.00 was held in an account
belonging to Client A bearing the account number 2290 1751 8763.
It was purportedly signed by a Private Banking Manager at Bank of
America identified herein as Collusive Banker 1.  The Secret
Service has confirmed with Bank of America that the letter is
fraudulent and that the account referenced therein does not exist
and never existed.

          94.    On or about September 26, 2008, Apogee provided
another false POF letter to Client A.  The letter was dated

September 26, 2008 and printed on Bank of America letterhead. It
stated, in sum and substance, that $100,000,000.00 was held in an
account belonging to Client A bearing the account number 2290
1751 8763. It was purportedly signed by Collusive Banker 1. The
Secret Service has confirmed with Bank of America that the letter
is fraudulent and that the account referenced therein does not
exist and never existed.

   B.  Apogee's Execution of the Client A Deals

        95.  On or about June 25, 2008, at approximately 6:09
p.m., AISHA HALL, using the email account
"verifyfunds@gmail.com," sent an email to JACQUELINE LAMBERT at
the address "lambertbiz@gmail.com" with the subject "Final
Letter." The email provided, "Hey Jackie . . . Call me regarding
the account number! Thanks." A false POF letter, with the file
name "[Client A] final.pdf" was attached to the email. The
letter was written on Bank of America stationery and stated that
"accounts" held in the name of Client A bearing the number 0033
4735 6122 contained $31,460,223.15.

        96.  About two hours later, at approximately 7:51 p.m.
on June 25, 2008, AISHA HALL, using the email account
"verifyfunds@gmail.com," sent another email to JACQUELINE LAMBERT
at the address "lambertbiz@gmail.com" with the subject "Final
Letter . . . Hope this is right!" The text of the email
provided, simply, "letter." A revised version of the false

34

Client A POF letter, this one with the file name "[Client A]
Final08.pdf," was attached to the email. The letter was
identical to the version attached to the 6:09 p.m. email in all
respects except that where the prior draft had stated that the
referenced "account<u>s</u>" (emphasis added) contained $31,460,223.15,
this version stated that the referenced "account" contained that
amount of money.

97. On or about September 3, 2008, at approximately
4:40 p.m., MARCEL ASBELL, using the email account
"mr.andersonmoney@gmail.com," sent an email to an individual
identified herein as Collusive Broker 1 with the subject "[Client
A] Contract." The email provided, "Let me know when the money is
in escrow so I can get started on my end." A contract between
Apogee and Client A was attached to the email with the file name
"[Client A] tract.pdf [sic]." The contract was signed on behalf
of Apogee by "Marlowe Anderson," which is one of MARCEL ASBELL's
aliases, on September 3, 2008. It was signed by two
representatives of Client A, Collusive Broker 1 and another
individual herein identified as Client 1, on August 3, 2008. The
contract provides, in relevant part:

> We [<u>i.e.</u>, Apogee] will provide the following services:
>
> Orchestrate the opening of a money market, Reserved Funds
> Letter, and/or checking or savings sub account for you.
>
> Once payment in the amount of $85,000.00 USD for a
> Reserved Funds Letter and sub case account of
> $80,000,000.00 to $85,000,000.00 USD is received by us

from you we will issue you written documentation confirming the type of account and the available balance.

The account is valid for 60 days . . . .

Your account will be fully serviced during the time it remains open. Your account may be verified up to 10 times during the 60 day period. . . .

The verification can only be done by the bank official who signed the instrument and said bank official will only verify that the account is an existing and valid account via telephone. This account cannot be pinged or electronically verified, and account balance verification can only be completed via FAX.

98. On or about September 5, 2008, at approximately 10:03 a.m., Collusive Broker 1 replied to MARCEL ASBELL's email attaching the contract. The email stated, in relevant part, "What is the ETA on the [Client A] . . . contract?"

99. On or about September 5, 2008, at approximately 5:18 p.m., YOLANDE REEVES, using the email account "davispof@gmail.com," sent an email to MARCEL ASBELL at the address "mr.andersonmoney@gmail.com" with the subject "[Client A] ltr." There is a false POF letter with the file name "[Client A].pdf" attached to the email. That letter was printed on Bank of America stationery and dated September 5, 2008. It provides, in relevant part: "We do hereby irrevocably confirm that we have blocked as of September 5, 2008, for the period of one year and one day, the account of [Client B] account number 2290 1751 8763 and the underlying cash funds/assets with a cash value in the amount of not less than $85,000,000 USD . . . in favor of [Client

A]."  It purports to be signed by Collusive Banker 1.  The fax
number provided for Collusive Banker 1 is (734) 268-4401.  That
fax number does not in fact belong to Collusive Banker 1 or Bank
of America, but instead links to an e-fax account held by Apogee
employee MARCEL ASBELL.  On September 8, 2008, an email was sent
from an e-fax service to "mr.andersonmoney@gmail.com," MARCEL
ASBELL's email account, attaching a fax that was sent by Client B
to Collusive Banker 1 at the fax number listed on the POF letter
requesting verification of the account referenced in the POF
letter.

          100.   On or about September 9, 2008, at approximately
12:11 p.m., Collusive Broker 1 sent an email to MARCEL ASBELL at
the email address "mr.andersonmoney@gmail.com" with the subject
"[Client B]/[Client A]: Invoice and Wire Instructions."  The
email stated, in part, "The broker fee from the $85,000 POF for
[Client A]/[Client B] is $25,000.  It is to be distributed from
Apogee in the following manner.  $12,500 to . . . [Collusive
Broker 1] . . . ."  On or about September 9, 2008, at
approximately 5:23 p.m., ASBELL forwarded that email to AISHA
HALL at "verifyfunds@gmail.com."

          101.   On or about September 12, 2008, at approximately
11:51 a.m., Collusive Broker 1 sent an email to MARCEL ASBELL at
the email address "mr.andersonmoney@gmail.com" with the subject
"[Client B]/[Client A]: Bank Statement."  That email reads:

37

The trader has said that a reserved funds letter is not enough to evidence the account of $85M with Bank of America. He will need to show a recent bank statement as well for the same amount.  It will need to have all normal pages a bank statement would have and be dated for the most recent date a bank statement from BofA would have sent out the statements for.  In other words if BofA sends out statements for August on the 1st of September then that is what we need.  It needs to follow normal protocol.

I have issue with the fact that the letter was for exactly 85,000,000.00.  I don't know why it was created that way.  Nevertheless, the bank statement should show for a slightly larger amount, and the reserved funds letter was just blocking the 85,000,000.00.  Therefore the statement should be for something like 86,192,908.21.

102.   On or about September 16, 2008, at approximately 4:42 p.m., YOLANDE REEVES, using the email account "davispof@gmail.com," sent an email to MARCEL ASBELL at "mr.andersonmoney@gmail.com" with the subject "[Client A] statement."  A false Bank of America bank statement, with the file name "[Client A] statement.pdf" was attached to the email. The statement, dated August 31, falsely provided that $85,000,000.00 was contained in a business checking account held by Client a bearing the account number 2290 1751 8763.

103.   On or about September 25, 2008, at approximately 10:41 a.m., MARCEL ASBELL, using the email account "mr.andersonmoney@gmail.com," sent an email to AISHA HALL at "equitygiant@yahoo.com" with the subject "[Client A]."  That email reads, "What time is [Collusive Banker 1] going to be available for a call from the trader??"

38

104. On or about September 26, 2008, at approximately 6:43 a.m., an individual identified herein as Collusive Broker 2 sent an email to MARCEL ASBELL at the email address "mr.andersonmoney@gmail.com," which was cc'd to Collusive Broker 1, with the subject "[Client A] INCREASE TO $100M." That email provides, in relevant part, "How soon can we get the [Client A] account to reflect $100M[?]"

105. On or about September 26, 2008, at approximately 11:54 a.m., YOLANDE REEVES, using the email account "davispof@gmail.com," sent MARCEL ASBELL, at the email address "mr.andersonmoney@gmail.com," an email with the subject, "REVISED [Client A]." A fake POF letter, with the file name "[Client A] LTR REV.pdf," was attached to the email. That letter, which was printed on Bank of America stationery, was dated September 26, 2008 and stated that an account containing $100,000,000.00 and bearing the number 2290 1751 8763 was held in the name of Client A and Client B.

106. On or about September 26, 2008, at approximately 2:53 p.m., MARCEL ASBELL, using the email account "mr.andersonmoney@gmail.com," sent an email to Collusive Broker 1 and Collusive Broker 2 with the subject "[Client A] 100M." The false POF letter described in paragraph [ ] was attached to the email. The email provides, in relevant part, "Here is the [Client A] 100M letter but [Collusive Banker 1] ask [sic] can you

39

wait till Monday to call because she will be in and out of the office today and doesn't want anyone else to answer because the BOA/Lasalle merger just completed and the regional managers are in her branch today I didn't want to forward it to you but I wanted you to know that I have it so if you can just hold off or tell [Client B] to hold off till Monday everything will go alot [sic] smoother."

107.    On or about October 13, 2008, at approximately 2:39 p.m., AISHA HALL, using the email account "verifyfunds@gmail.com," sent en email to JACQUELINE LAMBERT, at the email address "lambertbiz@gmail.com" and YOLANDE REEVES, at the email account "davispof@gmail.com," with the subject "New Deals for Jackie."  The email contains a list of "deals" and associated banks, account holders, account numbers, and POF letter dates.  One of those deals relates to Client A.  AISHA HALL writes, in relevant part:

Deal #3: (how much do I have to pay, I paid out on this deal once before to my banker but I lost her . . . please help I am offering 3K)
[Client A]
Bank: BOA Anaheim
Signor [Client B]
Account # 003347358379-A
Letter Dated October 14th
The account is set up as a sub-account and they think they are piggybacking from another account.
I used a real account number incase [sic] they try to validate the account #.

108.    On or about October 21, 2008, at approximately 8:14 a.m., an individual identified as Client C sent an email to

40

Collusive Broker 1, Collusive Broker 2, and Client B.   In that email, Client C noted that Collusive Broker 1 and Collusive Broker 2 "cannot seem to satisfy the specification of the GENUINE POF we require, which is to have funds or assets backing the statements and letters, thus making the POF that Apogee supplies illegal."

109.   On or about October 21, 2008, at approximately 8:16 a.m., Collusive Broker 2 forwarded that email to Collusive Broker 1 and AISHA HALL at the email address "verifyfunds@gmail.com."   Addressing HALL as "Asia," Collusive Broker 2 wrote, "I just spoke with [Client C] and he said that he wants his money back and he will report everyone to the authorities!!!!!"

The CS9 Deal

110.   Law enforcement agents have spoken with a broker who is cooperating with law enforcement, identified herein as CS9, who worked with four clients who contracted to lease funds from Apogee.   CS9 that he read one of Apogee's advertisements on Craiglist.com and that sometime around June 2008 he flew to Georgia to meet with AISHA HALL and discuss setting up leased-fund accounts on behalf of his clients.   HALL agreed to provide the 4 accounts that CS9 wished to set up.

111.   CS9 stated that on or about July 28, 2008, he paid Apogee $140,000 for the establishment of 4 leased-funds

41

accounts on behalf of his clients. According to CS9, AISHA HALL
emailed him four POF letters, each printed on Bank of America
letterhead and purportedly signed by CS4. Email records contain
copies of the 4 POF letters provided to CS9. Officials at Bank
of America have verified that each of the 4 POF letters Apogee
provided to CS9 reference accounts that do not exist and never
existed.

The CS10 Deal

112. Law enforcement agents spoke with an individual,
identified herein as CS10, who purchased \POF letters from
Apogee. On October 27, 2008, CS10's financial advisor emailed
SAMUEL JONES, at the email address "dj4914@gmail.com," asking
that a leased-funds account be set up for $200,000,000 on behalf
of CS10's company.

113. On or about October 29, 2008, YOLANDE REEVES,
using the email account "davispof@gmail.com," sent an email to
SAMUEL JONES at the email address "dj4914@gmail.com" with two POF
letters attached. The first letter, printed on Wachovia
stationery, stated that $201,782,567.89 was held in an account by
CS10 bearing the account number 200009596540. The letter was
purportedly signed by CS6 and listed his work address and phone
number. The second letter, printed on Wachovia stationery,
stated that $904,322,498.25 was held in an account by CS10
bearing the account number 200009598350. The letter was also

42

purportedly signed by CS6 and listed his work address and phone number. Wachovia executives have confirmed that the two referenced accounts do not exist and never existed.

114. On or about October 29, 2008, SAMUEL JONES, using the email address "dj4914@gmail.com," sent CS10's broker emails attaching the two above-referenced POF letters.

115. CS6 told law enforcement officials that in or about early November 2008 CS10 called him at his work and sought to verify the existence of the referenced accounts.

116. Account records indicate that on or about October 28, 2008, $550,000 was transferred from CS10's online escrow account to AISHA HALL's online escrow account, which bears the account name "Stikkee" with a note that stated "asset verification." Escrow company records show that on or about October 30, 2008, $50,000 was transferred from AISHA HALL's online escrow account to SAMUEL JONES's online escrow account with a note that stated, "Fees." On or about October 30, 2008, approximately $50,000 was transferred from SAMUEL JONES's online escrow account to SAMUEL JONES's bank account. *This amount is consistent with the 10% commission rate Apogee paid for deals with a value of $500,000 or more referenced*

117. On or about November 25, 2008, CS10's financial advisor sent an email to SAMUEL JONES at "dj4914@gmail.com" that *in paragraph* reads, in part, "Wachovia bank has 13 digits in their account *36. WJP* numbers! Our documents only have 12 we need to have [CS6]

43

explain that it is for account protection in private banking or whatever makes sense so they don't look fraudulent . . . .

## Conclusion

Wherefore, based on the foregoing, your deponent respectfully requests that warrants issue for the arrests of the defendants AISHA HALL, also known as "Aisha Rochester," "Asia" and "Mike Mitchell," MARCEL ASBELL, also known as "Marlowe Anderson," JERJUAN GARDNER, also known as "Henry Hill" and "Juan," SAMUEL JONES, also known as "Doug Johnson," YOLANDE REEVES, also known as "DeeDee Reeves" and "Veronica Davis," JACQUELINE LAMBERT, also known as "Jocelyn Wein" and "Sylvia," RAY KIM, also known as "Mike Lee," JINNATE GLASPER, also known as "Jinnate Jones" and "Jinnate Grays," and DAYANA MENDOZA so that they may be dealt with according to law.

MICHAEL PURCELL
Special Agent
United States Secret Service

Sworn to before me this
27 day of March, 2009.

UNITED   S/Gold
EASTERN                    JDGE
                           RK